## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NUMBER: 5:19-CR-366-BO(1)** |
| v. | |
| **AMADOU TIJAN KANTEH** | **AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION** |

I, Lori B. Warlick, being duly sworn, depose and state:

1. I am a citizen of the United States of America and a resident of the State of North Carolina.

2. I have been an attorney since 2007. From 2018 to the present, I have served as an Assistant United States Attorney in the Eastern District of North Carolina. My duties include prosecuting persons charged with criminal violations of the laws of the United States. During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3. As an Assistant U.S. Attorney for the Eastern District of North Carolina, I am responsible for the preparation and prosecution of criminal cases. Based upon my training and experience, I am an expert in the criminal laws and procedures of the United States.

4. In the course of my duties, I have become familiar with the charges and evidence in the case of United States v. Amadou Tijan Kanteh, Case Number 5:19-CR-366-BO(1) (also referred to as Case Number 5:19-cr-00366-BO). This prosecution arose from an internal audit from the United States Department of Defense (DOD) on Defense Travel System (DTS) procedures and the subsequent investigation by Army Criminal Investigation Command (Army CID), Defense Criminal Investigative Service (DCIS), and the Diplomatic Security Service (DSS), which revealed that from April 2014 to August 2017, AMADOU TIJAN

1

KANTEH (KANTEH), a dual citizen of the United States and The Gambia, created and authorized fictitious travel expense vouchers using identities of military members and having the reimbursement amounts deposited into bank accounts KANTEH controlled. Through this scheme, KANTEH caused some $802,000 in losses.[1]

## **PROCEDURAL HISTORY OF THE CASE**

**The Charging Process**

5. Under the federal law of the United States, a criminal prosecution may commence when a grand jury files an indictment. Institutionally, a grand jury, though an arm of the court, is an independent body composed of private citizens—not less than 16 and not more than 23 people—whom the United States District Court selects at random from the residents of the judicial district in which the court resides. The purpose of the grand jury is to review the evidence of crimes presented to it by United States law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine whether there is probable cause to believe that a crime has been committed and that a particular person committed that crime. If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person committed the crime, the grand jury may return an indictment. An indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, identifies the specific laws that the defendant is accused of violating, and specifies the date and place where the charged crime occurred.

---

[1] All references to currency are in U.S. dollars unless otherwise noted.

6. The grand jury initiates the criminal prosecution when it files the indictment with the United States District Court. Thereafter, the clerk of the court, at the direction of a United States District Judge or Magistrate Judge, normally issues a warrant for the defendant's arrest.

7. In addition to imprisonment and a criminal fine, depending on the charged offense, United States law provides for the seizure and forfeiture of property of the defendant that constitutes the proceeds of the offense or that facilitates such offense. A criminal forfeiture may be alleged in an indictment, and merely provides notice to the defendant of the government's intention to forfeit property associated with the offense. If specific property is listed in the forfeiture allegation, the grand jury must find probable cause to believe that the property is forfeitable. Upon a showing of probable cause, a United States District Court Judge or Magistrate Judge may issue a seizure warrant for the seizure of the property.

8. On September 4, 2019, shortly after completion of the investigation, a grand jury sitting in the Eastern District of North Carolina returned an indictment, Crim. No. 5:19-CR-366-BO(1), charging KANTEH with criminal offenses against the laws of the United States, and filed this indictment with the United States District Court for the Eastern District of North Carolina. It is the practice of the United States District Court for the Eastern District of North Carolina to retain the original indictment and file it with the records of the court. Therefore, I have obtained a copy of the indictment from the clerk of the court and attached it to this statement as **Exhibit A**.

9. On September 4, 2019, based on the indictment field by the grand jury, and with the approval of the United States District Court for the Eastern District of North Carolina, the deputy clerk of the court signed a warrant of arrest for KANTEH in the name of the clerk of the court. Pursuant to Rule 9 of the Federal Rules of Criminal Procedure, the clerk of the court is the

3

authority competent to sign arrest warrants and deliver them for execution to law enforcement authorities competent to make arrests. A copy of Rule 9 is attached to this statement as **Exhibit C**. This function—to sign and deliver arrest warrants—also resides in, and is appropriately, customarily, and lawfully exercised by, deputy clerks of the court. In fact, in nearly every case in this district, a deputy clerk, and not the appointed clerk, signs and delivers arrest warrants. It is the practice of the United States District Court for the Eastern District of North Carolina to retain the original arrest warrant and file it with the records of the court. Therefore, I have obtained a copy of the arrest warrant, certified as true and accurate, from the clerk of the court and attached it to this statement as **Exhibit B**.

### THE CHARGES AND PERTINENT UNITED STATES LAW

10. The indictment charges that KANTEH committed the following offenses in 150 Counts:

Counts 1–146: Fraud by wire, radio, or television, in violation of Title 18, United States Code (U.S.C.), Section (§) 1343;

| | |
|---|---|
| Count 147: | Theft of United States Government property, in violation of 18 U.S.C. § 641; |
| Count 148: | Aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); |
| Count 149: | United States Passport Application Fraud, in violation of 18 U.S.C. § 1542; and |
| Count 150: | Aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). |

11. The United States requests the extradition of KANTEH for all of these offenses. Each count charges a separate offense. Each offense is punishable under a statute that (1) was the duly enacted law of the United States at the time the offense was committed, (2) was the duly enacted law of the United States at the time the indictment was filed, and (3) is currently in

4

effect. Each offense is punishable under United States law by more than one year of imprisonment. Copies of the pertinent sections of these statutes are attached as **Exhibit C**.

Counts 1 through 146

12. Counts 1 through 146 charge KANTEH with wire fraud, in violation of 18 U.S.C. § 1343. Wire fraud is an office for which the United States may extradite under its laws. The maximum penalty for this offense is 20 years in prison.

13. To satisfy its burden of proof and convict KANTEH on Counts 1 through 146, the government at trial must establish beyond a reasonable doubt with respect to each count, each of the following essential elements: (1) that the defendant devised or intended to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material; and (2) that, for the purpose of executing the scheme, the defendant transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds.

14. The United States, at trial, will establish these elements beyond a reasonable doubt primarily through: the records of the DTS system, bank records, and the testimony of witnesses who will address how the DTS system works and KANTEH's authorization capability, as well as that of victims whose identifications were used to establish some of the fraudulent accounts and in whose name deposits to KANTEH were made. These records and testimony will establish KANTEH created false authorizations and vouchers, made demands to pay by interstate wire communications, and received the monies through these fraudulent means over wire as well.

5

<u>Count 147</u>

16. Count 147 charges KANTEH with theft of government property in violation of 18 U.S.C. § 641. Theft of government property is an office for which the United States may extradite under its laws. The maximum penalty for this offense is 10 years in prison.

17. To satisfy its burden of proof and convict KANTEH on this count, the government, at trial, must establish beyond a reasonable doubt each of the following three essential elements: (1) defendant embezzled, stole, purloined, or converted to his use a thing of value of the United States; (2) that property belonged to the United States and was valued at more than $1,000; and (3) that he acted willfully.

18. The United States, at trial, will establish these elements beyond a reasonable doubt primarily through: records of the DTS system, bank records, and the testimony of the persons described above, which will establish KANTEH created false authorizations and vouchers in a government system and willfully caused government monies to be wrongly paid to him.

<u>Counts 148 and 150</u>

19. Counts 148 and 150 each charge KANTEH with aggravated identity theft, in violation of 18 U.S.C. § 1028A, which makes it an offense against the United States to use the identity of another person during certain enumerated crimes. Aggravated identity theft is an office for which the United States may extradite under its laws. The maximum penalty for this offense is two years in prison.

20. To satisfy its burden of proof and convict KANTEH on these counts, the government, at trial, must establish beyond a reasonable doubt, with respect to each count, each of the following essential elements: (1) that he transferred, possessed, or used; (2) without lawful authority;

6

(3) a means of identification of another person; (4) that the defendant did so during and in relation to theft of government property or passport fraud; and (5) he did so knowingly.

21. The United States, at trial, will establish these elements beyond a reasonable doubt primarily through the testimony of those two persons whose identities were falsely used, and the records establishing use of their identities by KANTEH.

Count 149

22. Count 149 charges KANTEH with making a false statement in a passport application, in violation of 18 U.S.C. § 1542. Making a false statement in a passport application is an office for which the United States may extradite under its laws. The maximum penalty for this offense is 10 years in prison.

23. To satisfy its burden of proof and convict KANTEH on Count 149, the government at trial must establish beyond a reasonable doubt each of the following three essential elements: (1) that KANTEH made a false statement in an application for a passport for his own use or the use of another; (2) the defendant did so with intent to induce or secure the issuance of a passport under the authority of the United States and contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; and (3) that he did so knowingly and willfully.

24. The United States, at trial, will establish these elements beyond a reasonable doubt primarily through: the passport application completed by KANTEH, and witness testimony establishing that KANTEH submitted a statement of need for an official passport, this statement was false and forged, and that KANTEH knowingly and willfully submitted this false statement so that he could get the requested passport.

Statute of Limitations

7

25. The statute of limitations applicable to the offenses charged in each count 1 through 150 is 18 U.S.C. § 3282, which allows prosecution to commence within five years after the offense is committed. For a continuing offense, such as the scheme and artifice presented in Counts 1 through 146, the statute of limitations begins to run when the crime is completed. A copy of the statute is attached as **Exhibit C**.

26. I have thoroughly reviewed the applicable statutes of limitation. The indictment is dated September 4, 2019, and Counts 1 through 147 charge offenses arising from the same scheme, beginning April 4, 2014, and continuing until August 30, 2017. Counts 148 through 150 charge offenses that occurred in April and July of 2016. Therefore, KANTEH was formally charged within the prescribed time.

## SUMMARY OF FACTS

27. KANTEH immigrated to the United States in the late 1990s and enlisted in the Army National Guard on July 14, 2000. On May 20, 2012, he also obtained a civilian job with the United States Department of the Army. Throughout the time relevant to the crimes, he was a Sergeant and then a Staff Sergeant in the Army Reserves and a Department of the Army civilian employee, assigned in both positions to the North Carolina Army Reserve National Guard in Raleigh, North Carolina, as a "Financial Management Technician." In this role, which included that of Defense Travel Administrator, he had broad authority within the DTS. The DTS is a fully integrated, automated, end-to-end travel management system that enables DOD travelers to create authorizations (temporary duty (TDY) travel orders), prepare reservations, receive approvals, generate travel vouchers, and receive a split reimbursement between their bank accounts and the Government Travel Charge Card vendor.

8

28. KANTEH's level of access to the DTS allowed him to act as the approving official for travel authorizations and vouchers of others. In this case, KANTEH created fictitious DTS authorizations and vouchers, which falsely claimed official travel had been undertaken, or would be undertaken. On at least two occasions—on or about April 26, 2016, and July 12, 2016—KANTEH used the identities of two individuals without their permission to perpetrate this fraud. KANTEH then self-approved and initiated the payment of expenses and advance payment funds corresponding to those false authorizations and vouchers, which were ultimately routed via wire transfer to accounts associated with KANTEH. Between May 2014 and April 2017, KANTEH created and approved 146 fraudulent vouchers and authorizations paid over wire transmission, totaling approximately US$802,000.

29. Additionally, on July 16, 2016, KANTEH applied for a Special-Issuance Passport (official passport) that would enable him to travel abroad on official U.S. government business. The official passport (number 821698641) was issued on August 2, 2016. It was determined throughout the course of the investigation that KANTEH had no official reason to request an official passport and that the supporting documentation from his direct-line military commander indicating the need for KANTEH's expedited passport issuance as well as stating that KANTEH would be on official military business was fabricated.

30. KANTEH was discharged from the Army Reserve National Guard on September 22, 2016, and from his work as a civilian for the Army Reserve National Guard, on March 17, 2017. On August 30, 2017, KANTEH departed the United States for Dakar, Senegal, before returning to The Gambia.

Case 5:19-cr-00366-M    Document 13    Filed 03/10/26    Page 9 of 22

31. Additional facts are presented in more detail in the affidavit of Special Agent Jonathan Berryhill, Bureau of Diplomatic Security, Diplomatic Security Service, U.S. Department of State, attached as **Exhibit D**.

<u>**IDENTIFICATION AND LOCATION INFORMATION**</u>

32. AMADOU TIJAN KANTEH was born on February 17, 1970, in Banjul, The Gambia. He stands approximately 180 centimeters in height, weighs roughly 71-83 kilograms, and has black hair and brown eyes. He has previously held United States passport number 821698641, which expired on August 1, 2021. On January 16, 2026, Cameroonian authorities arrested KANTEH at Douala International Airport pursuant to an INTERPOL Red Notice.

33. The affidavit of Special Agent Jonathan Berryhill, attached as **Exhibit D**, reflects identification of known photographs of KANTEH, attached as **Attachments 1-5** to **Exhibit D**.

34. I have attached to this statement the following documents:

**Exhibit A**: Certified copy of the indictment.

**Exhibit B**: Certified copy of the arrest warrant.

**Exhibit C**: Pertinent sections of relevant legal provisions

**Exhibit D**: Affidavit of U.S. Department of State Diplomatic Security Service Special Agent Jonathan Berryhill

**Attachment 1-5**: photographs of KANTEH

## CONCLUSION

35. This affidavit, including its exhibits, contains sufficient evidence to support the request of the United States of America that KANTEH be extradited from the Republic of Cameroon to the United States of America, Eastern District of North Carolina, for prosecution on the above-cited offenses, and that he be detained pending the determination of his extradition, and any appeal thereof.

Lori B. Warlick
Assistant United States Attorney

I hereby certify that on March $\underline{10}$ , 2026, Assistant United States Attorney Lori B. Warlick appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

ROBERT T. NUMBERS, II
United States Magistrate Judge
United States District Court for the Eastern District of North Carolina
UNITED STATES OF AMERICA

11

[PLACEHOLDER]

# EXHIBIT A:
## Certified Copy of Indictment

[PLACEHOLDER]

# EXHIBIT B:
## Certified Copy of Arrest Warrant

# EXHIBIT C:
## Relevant Legal Provisions

This document, **Exhibit C**, contains, among other contents, the applicable portions of statutes describing the offenses with which AMADOU TIJAN KANTEH is charged, the statute of limitations, and the penalties KANTEH faces if convicted. Asterisks and ellipses are used to indicate portions of the statutes which are omitted because these portions do not apply to the case against KANTEH.

## Federal Rules of Criminal Procedure Rule 9
### Arrest Warrant or Summons on an Indictment or Information

(a) ISSUANCE. The court must issue a warrant—or at the government's request, a summons—for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it. The court may issue more than one warrant or summons for the same defendant. If a defendant fails to appear in response to a summons, the court may, and upon request of an attorney for the government must, issue a warrant. The court must issue the arrest warrant to an officer authorized to execute it or the summons to a person authorized to serve it.

(b) FORM.

   (1) Warrant. The warrant must conform to Rule 4(b)(1) except that it must be signed by the clerk and must describe the offense charged in the indictment or information.

   (2) Summons. The summons must be in the same form as a warrant except that it must require the defendant to appear before the court at a stated time and place.

(c) EXECUTION OR SERVICE; RETURN; INITIAL APPEARANCE.

   (1) Execution or Service.

      (A) The warrant must be executed or the summons served as provided in Rule 4(c)(1), (2), and (3).

      (B) The officer executing the warrant must proceed in accordance with Rule 5(a)(1).

   (2) Return. A warrant or summons must be returned in accordance with Rule 4(c)(4).

   (3) Initial Appearance. When an arrested or summoned defendant first appears before the court, the judge must proceed under Rule 5.

(d) WARRANT BY TELEPHONE OR OTHER MEANS. In accordance with Rule 4.1, a magistrate judge may issue an arrest warrant or summons based on information communicated by telephone or other reliable electronic means.

## Title 18, United States Code, Section 1343
### Fraud by wire

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . imprisoned not more than 20 years . . . . .

## Title 18, United States Code, Section 641
## Public money, property or records

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be . . . imprisoned not more than ten years . . . .

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

## Title 18, United States Code, Section 1028A
## Aggravated identity theft

**(a) Offenses.—**

**(1) In general.**—Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years . . . .

**(b) Consecutive Sentence.**—Notwithstanding any other provision of law—
**(1)** a court shall not place on probation any person convicted of a violation of this section;
**(2)** except as provided in paragraph (4), no term of imprisonment imposed on a person under this section shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law, including any term of imprisonment imposed for the felony during which the means of identification was transferred, possessed, or used;
**(3)** in determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section; and
**(4)** a term of imprisonment imposed on a person for a violation of this section may, in the discretion of the court, run concurrently, in whole or in part, only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section, provided that such discretion shall be exercised in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28.

**(c) Definition.**—For purposes of this section, the term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of—
**(1)** section 641 (relating to theft of public money, property, or rewards[1]), section 656 (relating to theft, embezzlement, or misapplication by bank officer or employee), or section 664 (relating to theft from employee benefit plans);

* * *

**(5)** any provision contained in chapter 63 (relating to mail, bank, and wire fraud);

* * *

**(7)** any provision contained in chapter 75 (relating to passports and visas) . . . .

---

[1] So in original.  Probably should be "records."

## Title 18, United States Code, Section 1542
### False statement in application and use of passport

Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or

Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement—

Shall be . . . imprisoned not more than . . . 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime) . . . .

## Title 18, United States Code, Section 3282
### Offenses Not Capital

(a) In General.—

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

\* \* \*

[PLACEHOLDER: included separately for EDNC Court action]

# EXHIBIT D:
## Agent's Affidavit